Judgment rendered June 30, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,791-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

Versus

GARY P. SIMS, JR.                           Appellant

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Union, Louisiana
Trial Court No. 2017-F-55013

Honorable Jeffrey L. Robinson, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Peggy J. Sullivan

JOHN F.K. BELTON                       Counsel for Appellee
District Attorney

E. MICHAEL MAHAFFEY
CLIFFORD ROYCE STRIDER III
Assistant District Attorneys

* * * * *

Before MOORE, STONE, and STEPHENS, JJ.

MOORE, C.J., concurs and assigns reasons.

STONE, J., dissenting in part.

**STEPHENS, J.**

This criminal appeal by defendant, Gary P. Sims, Jr., arises from the Third Judicial District Court, Union Parish, State of Louisiana. Sims was convicted of one count of aggravated battery and six counts of aggravated assault on a peace officer with a firearm and sentenced to a total of 30 years at hard labor. For the following reasons, we affirm Sims' conviction and sentence for aggravated battery and reverse his convictions and sentences for aggravated assault on a peace officer with a firearm.

## FACTS AND PROCEDURAL HISTORY

On April 11, 2017, Sims discharged a firearm from inside his residence in Downsville, Louisiana, after a deputy with the Union Parish Sheriff's Department had approached the residence to serve a warrant on him. Multiple law enforcement agencies responded after Sims' shot was reported. Over the course of several hours, Sims remained inside his residence, which was surrounded by tactical law enforcement teams. Sims later fired from within the residence a second time and was ultimately taken into custody after law enforcement deployed chemical agents into the home. No law enforcement officers were injured during the incident. Sims was charged by amended bill of information with seven counts of attempted first degree murder.

A jury trial began on September 23, 2019. Sims was convicted of one count of aggravated battery and six counts of aggravated assault on a peace officer with a firearm. On December 18, 2019, the trial court sentenced Sims to 10 years at hard labor on each count, with three counts to be served consecutively, and the other four counts to be served concurrently, for a total sentence of 30 years at hard labor. Defense counsel's oral motion for

reconsideration based on the consecutive and excessive nature of the sentences was denied by the trial court. This appeal by Sims ensued.

## DISCUSSION

On appeal, Sims asserts three assignments of error: (1) there is insufficient evidence to support the aggravated battery conviction; (2) aggravated assault on a peace officer with a firearm is not a responsive verdict to attempted first degree murder; and (3) the sentences imposed are excessive.

*Overview of Relevant Testimony*

On April 11, 2017, around 8:30 a.m., Deputy Bruce McCrell of the Union Parish Sheriff's Department arrived to serve a warrant on Sims at his residence in Downsville, Louisiana. Deputy McCrell was dressed in official uniform and driving a marked unit. Deputy McCrell knocked on the front door of Sims' mobile home but received no response. He then went to the back door and knocked. Still receiving no response, Dep. McCrell used a broken axe handle found outside the residence to reach over a bush and knock on the front of the home near a window, where he believed the bedroom would be located. Deputy McCrell heard someone inside the residence respond but could not understand what was said. Deputy McCrell identified himself, asked the person to meet him at the front door to talk, and walked back to the front door. When no one came to the door, Dep. McCrell again knocked on the wall near the window with the axe handle, at which time "a gunshot come through the side of the trailer," slightly to the right of where Dep. McCrell was standing. Deputy McCrell retreated from the mobile home and requested assistance from dispatch.

A number of officers responded to the location, including members of the Union Parish Sheriff's Department, the Monroe Police Department SWAT Team, the Ouachita Parish SWAT Team, and the Louisiana State Police SWAT Team. The officers used loudspeakers in an unsuccessful attempt to establish contact with Sims and get him to surrender. Around 12:00 p.m., the Monroe SWAT Team breached the front door of the mobile home with their armored vehicle, the "bearcat," so they could throw in a phone, but Sims slammed the door shut. At 12:35 p.m., two teams of officers deployed multiple ferret rounds of CS powder into the mobile home. The team positioned behind the home consisted of Scotty Sadler, Donnell Gray, James Crouch, and Kevin Cope of the Monroe Police Department SWAT Team, and Chris Wright and Nathan Sharbono of the Louisiana State Police. As that team was deploying CS powder into the rear of the mobile home, they heard one or two gunshots.[1] The shots came from inside the residence through the window on the back door. None of the officers were injured, and they did not return fire. More CS powder and CS gas were deployed, and an unarmed Sims eventually exited the mobile home through the back door. Sims was shot with a beanbag round and finally apprehended around 1:30 p.m.

Sims' home was positioned on a slope, with the ground in front of the mobile home being higher than the ground in the rear. The first shot exited the residence at a slight upward angle, and the shotgun pellets hit a utility pole positioned approximately four feet seven inches from the home, as well as the rear driver's side window of Sims' truck. Pellets from the subsequent

_____

[1] Officer Sadler and Trooper Wright heard two gunshots; Officer Gray heard one gunshot; Officer Crouch heard at least one gunshot.

3

shot(s) fired were not recovered, and officers were unable to determine their trajectory. Police recovered a total of two shell casings from the residence: one casing was found on top of the refrigerator (where Sims said he placed the casing from the first shot fired at Dep. McCrell), and the other casing was found on the floor in the kitchen.

At trial, Sims testified that he had been at his friend's house the night before the incident, drinking all night, and that he "felt like crap." This incident started shortly after he got home that morning. When he got to his house, he made a drink, Seagram's Seven, nearly straight. Sims turned on the window A/C unit in the bedroom to high, finished his drink, and lay down on the bed. Sims heard somebody knock on the bedroom window by the window unit. He thought somebody was breaking into his home because a couple of nights before, a light on his shed was torn down and disabled. Sims did not look out the window, but grabbed his shotgun, went over to the wall by the window, asked who was there, and said he was going to shoot if he didn't get an answer. When Sims did not hear anything, he fired a shot through the wall. Sims stated that he felt threatened and was not trying to kill anybody, just trying to scare off the person.

Sims took the shell casing to the kitchen and made himself another drink. He then went back into the bedroom, finished his drink, and passed out. According to Sims, the next thing he remembered was the bathroom window being knocked out, which scared him. Sims grabbed his shotgun, went into the kitchen, and fired a shot out the back door, believing that somebody was stealing stuff from his shed. He stated that he did not aim at the officers and did not even know they were there. Sims testified that he never heard the loudspeaker and did not remember slamming the front door

4

shut. When he saw the tear gas in the kitchen, Sims realized that it was probably the police, not regular criminals, so he went out the back door, and he was arrested. During his arrest, Sims suffered injuries requiring stitches in his ear and staples to the back of his head.

*Sufficiency of the Evidence:*
*Aggravated Battery*

In his first assignment of error, Sims asserts the evidence presented at trial is insufficient to support his conviction of aggravated battery. Sims argues that because there was no physical contact to support his conviction for aggravated battery, the state had to produce sufficient evidence to prove that he was guilty of attempted first degree murder, the charged offense, in order for the conviction to stand. Sims maintains that because he was not shooting at anyone and only intended to scare the person banging on the side of his home, he did not have the requisite specific intent to kill.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. La. C. Cr. P. art. 821; *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 2001-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Young*, 51,711 (La. App. 2 Cir. 1/18/18), 245 So. 3d 353, *writ denied*, 2018-0309 (La. 11/14/18), 256 So. 3d 283. The *Jackson* standard does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 2005-0477 (La.

2/22/06), 922 So. 2d 517; *State v. Kirby*, 53,661 (La. App. 2 Cir. 1/13/21), 309 So. 3d 946, *writ denied*, 2021-00254 (La. 5/11/21), __ So. 3d __.

The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. Robinson*, 50,643 (La. App. 2 Cir. 6/22/16), 197 So. 3d 717, *writ denied*, 2016-1479 (La. 5/19/17), 221 So. 3d 78.

The appellate court does not assess the credibility of witnesses or reweigh evidence. *State v. Smith*, 1994-3116 (La. 10/16/95), 661 So. 2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Jackson*, 53,497 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1156. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Dyas*, 53,597 (La. App. 2 Cir. 1/13/21), 309 So. 3d 955; *writ denied*, 2021-00256 (La. 5/4/21), __ So. 3d __.

When a defendant does not object to a legislatively established responsive verdict, the defendant's conviction will not be reversed, whether or not that verdict is supported by the evidence, as long as the evidence is

6

sufficient to support the offense charged. *State ex rel. Elaire v. Blackburn*, 424 So. 2d 246 (La. 1982), *cert. denied*, 461 U.S. 959, 103 S. Ct. 2432, 77 L. Ed. 2d 1318 (1983); *State v. Jones*, 45,450 (La. App. 2 Cir. 8/11/10), 46 So. 3d 711, *writ denied*, 2010-2082 (La. 2/11/11), 56 So. 3d 1000. *See also* La. C. Cr. P. art. 814(C) (which authorizes the trial court to exclude a legislatively authorized responsive verdict "[u]pon motion of the state or the defendant, or on its own motion, ... if, after all the evidence has been submitted, the evidence, viewed in a light most favorable to the state, is not sufficient reasonably to permit a finding of guilty of the responsive offense.").

Aggravated battery is a responsive verdict to attempted first degree murder. La. C. Cr. P. art. 814(A)(2). A battery is the intentional use of force or violence upon the person of another. La. R.S. 14:33. An aggravated battery is a battery committed with a dangerous weapon. La. R.S. 14:34.

La. R.S. 14:30(A) provides, in pertinent part, that first degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm upon a peace officer engaged in the performance of his lawful duties.

An attempt to commit a crime is defined in La. R.S. 14:27(A), which provides:

> Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

7

The crime of attempted murder, whether first or second degree, requires proof of the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. *State v. Hust*, 51,015 (La. App. 2 Cir. 1/11/17), 214 So. 3d 174, *writ denied*, 2017-0352 (La. 11/17/17), 229 So. 3d 928. Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Such state of mind can be formed in an instant. Because specific intent is a state of mind, it does not have to be proven as a fact, but may be inferred from the circumstances and the conduct of the accused. *State v. Frost*, 53,312 (La. App. 2 Cir. 3/4/20), 293 So. 3d 708, *writ denied*, 2020-00628 (La. 11/18/20), 304 So. 3d 416. Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing it at a person. *State v. Reed*, 2014-1980 (La. 9/7/16), 200 So. 3d 291, *cert. denied*, __ U.S. __, 137 S. Ct. 787, 197 L. Ed. 2d 258 (2017). The fact that multiple shots are fired at a victim indicates a defendant's culpable state of mind and satisfies the specific intent to kill requirement for murder. *State v. Frost*, *supra*; *State v. Hust*, *supra*. The determination of whether the requisite intent is present is a question for the trier of fact. *State v. Frost*, *supra*; *State v. Apodaca*, 50,113 (La. App. 2 Cir. 9/30/15), 180 So. 3d 465.

In Count One, Sims was charged with attempted first degree murder of Dep. McCrell; however, he was convicted of aggravated battery, a statutorily provided responsive verdict. The defense did not object to the jury charges or the inclusion of aggravated battery as a responsive verdict. The jury's reasoning for returning this responsive verdict is unclear; no battery occurred—Dep. McCrell was not hit by the shot fired by Sims.

8

Nevertheless, because Sims did not object to the inclusion of aggravated battery as a responsive verdict, the jury's verdict should be affirmed as long as the evidence presented at trial is sufficient to support a conviction for the charged offense of attempted first degree murder.

Sims asserts the state failed to prove he had the requisite specific intent to kill Dep. McCrell. Sims testified he never looked out the window, never heard Dep. McCrell identify himself, and believed the person knocking was trying to break in. He stated he shot because he felt threatened and was trying to scare the person off and that he was not trying to kill anybody. However, Dep. McCrell testified that when he knocked on the front side of the mobile home with the axe handle, he announced himself as a deputy with the Union Parish Sheriff's Department. He spoke in a loud voice because he could hear the window A/C unit was on. When Dep. McCrell identified himself, he heard someone inside the residence respond, but he could not understand what was said. He stated the gunshot came out of the side of the mobile home slightly to his right—directly in the area where he had knocked.

Sims relies on *State v. Whins*, 1996-0699 (La. App. 4 Cir. 4/9/97), 692 So. 2d 1350, *writ denied*, 1997-1227 (La. 11/7/97), 703 So. 2d 1263, in which the Fourth Circuit affirmed the trial court's granting of a post-verdict judgment of acquittal on grounds that there was insufficient evidence of specific intent to kill. In that case, the defendant fired shots at the doorknob and into the windows of a mobile home where his ex-girlfriend, her father, and two children were present, when his ex-girlfriend refused to come out. However, no one was near the windows, the shotgun pellets lodged upward into the ceiling, and no one inside was struck. The court found that, viewing

9

the evidence in the light most favorable to the prosecution, the state had not excluded the reasonable hypothesis that the defendant had fired at the mobile home in an effort to intimidate his ex-girlfriend into coming outside or that he shot the doorknob in an effort to gain entrance into the mobile home.

This case is distinguishable from *State v. Whins*—the evidence does not support that Sims' shot at Dep. McCrell was a warning shot or an effort to intimidate. When considered together, the gunshot hole in the side of the trailer, the location of the recovered pellets, and the slope of the ground around the mobile home clearly establish Sims aimed and fired directly where Dep. McCrell was knocking on the trailer. We note that had Dep. McCrell navigated the shrubbery along the front of the mobile home in order to knock near the window with a customary closed fist instead of reaching across to knock with an axe handle, he might not have survived his encounter with Sims.

Based on the testimony and the physical evidence presented at trial, the jury could have reasonably rejected Sims' self-serving, and arguably outlandish, testimony that he shot a hole through an exterior wall of his home without first looking out the window to see who he was shooting at. Accordingly, the jury could have likewise reasonably concluded Sims was aware the person outside his residence was a police officer rather than a trespasser who needed to be scared away. Viewed in the light most favorable to the state, the evidence was sufficient to prove that Sims had the specific intent to kill Dep. McCrell. This assignment of error is without merit.

*Non-responsive Verdict:*
*Aggravated Assault on a Peace Officer with a Firearm*

In his second assignment of error, Sims asserts aggravated assault on a peace officer with a firearm is not a responsive verdict under La. C. Cr. P. art. 814 to the offense of attempted first degree murder, and that it was error patent for the trial court to instruct the jury as to this responsive verdict instead of aggravated assault with a firearm. Accordingly, Sims argues his convictions for aggravated assault on a peace officer with a firearm should be vacated.

A non-responsive verdict is "error patent on the face of the record and therefore reviewable on appeal despite absence of an objection during trial." *State v. Turnbull*, 377 So. 2d 72 (La. 1979); *State v. Campbell*, 1995-1409 (La. 3/22/96), 670 So. 2d 1212 (although defendants "acquiesced in the list of responsive verdicts given jurors by the trial judge," the jury's "return of the unresponsive verdicts ... constitutes an error patent on the face of the record"); *State v. Robinson*, 52,308 (La. App. 2 Cir. 11/28/18), 259 So. 3d 1244.

Responsive verdicts prescribed by La. C. Cr. P. art. 814 are by the express terms of that article the "only responsive verdicts which may be rendered" where the indictment charges the crimes set forth in Article 814. A trial court lacks the authority to vary or add to the prescribed verdicts mandated by La. C. Cr. P. art. 814. *State v. Simmons*, 357 So. 2d 517 (La. 1978).

The jury's return of a non-responsive verdict constitutes an "implicit acquittal" of the crimes charged. *State v. Price*, 2017-0520 (La. 6/27/18), 250 So. 3d 230. *See, State v. Graham*, 2014-1801 (La. 10/14/15), 180 So.

11

3d 271; *State v. Robinson*, *supra*. In *State v. Price*, the Louisiana Supreme Court found that the jury's verdict of guilty of simple kidnapping was non-responsive to the crime charged of second degree kidnapping, and in *State v. Graham*, *supra*, it likewise found that the jury's verdict of guilty of molestation of juvenile was non-responsive to the charged crime of aggravated incest. Both the *Price* and *Graham* courts reversed the defendant's conviction and sentence and remanded the matter to the trial court for entry of a post-verdict judgment of acquittal. In doing so, the Louisiana Supreme Court applied longstanding principles to find that the double jeopardy clause bars a defendant from being retried following an implicit acquittal on the crime charged. *See*, *Price v. Georgia*, 398 U.S. 323, 329, 90 S. Ct. 1757, 1761, 26 L. Ed. 2d 300 (1970) ("[T]his Court has consistently refused to rule that jeopardy for an offense continues after an acquittal, whether that acquittal is express or implied by a conviction on a lesser included offense when the jury was given a full opportunity to return a verdict on the greater charge.") (footnote omitted); *see also*, *Green v. United States*, 355 U.S. 184, 188, 78 S. Ct. 221, 223-24, 2 L. Ed. 2d 199 (1957) (verdict of acquittal is final, "ending a defendant's jeopardy, and even when 'not followed by any judgment, is a bar to a subsequent prosecution for the same offence' ") (quoting *Ball v. U.S.*, 163 U.S. 662, 671, 16 S. Ct. 1192, 1195, 41 L. Ed. 300 (1896) ).

In *State v. Mayeux*, 498 So. 2d 701 (La. 1986), the Louisiana Supreme Court addressed a verdict that was not only non-responsive but was also for a non-enumerated crime. The defendant in *Mayeux* was charged with aggravated battery, and the jury returned a verdict of attempted aggravated battery. Finding that in addition to being unresponsive to the crime charged,

the verdict purported to convict the defendant of an offense not specifically designated as a crime in Louisiana, the court held the verdict was "wholly invalid," amounted to conviction of a "non-crime," and could therefore operate neither as a conviction nor an acquittal for purposes of double jeopardy. The court concluded the appropriate action was to set aside the conviction and remand for retrial.

However, Mayeux subsequently obtained habeas relief from a federal district court, which held the jury's verdict, although non-legal, constituted an acquittal on the aggravated battery charge, and that a second trial on that charge put defendant twice in jeopardy. *Mayeux v. Belt*, 737 F. Supp. 957, 961-62 (W.D. La. 1990). That court found:

> Even though the jury at Mayeux's first trial returned an improper verdict, that jury had been "given a full opportunity to return a verdict" on the charge of aggravated battery, and instead reached a verdict on what the judge had instructed was a lesser charge. The judge had clearly told the jury that if they were not convinced that Mayeux was guilty of aggravated battery, but were convinced beyond a reasonable doubt that he was guilty of attempted aggravated battery, the form of their verdict should be, "We, the jury, find the defendant guilty of Attempted Aggravated Battery." When the jury brought back precisely that verdict, it clearly showed that the jury had acquitted Mayeux of aggravated battery. Therefore, Mayeux's second trial unconstitutionally put him in jeopardy a second time on the charges of aggravated battery.
>
> . . .
>
> Even though the verdict of the jury at Mayeux's first trial could operate neither as a conviction nor acquittal of the non-crime of "attempted aggravated battery", there is no reason why it could not operate as an acquittal of the charge of aggravated battery, because the judge's instructions so directed. Even though the judge's instructions concerning a possible verdict of "attempted aggravated battery" were egregiously erroneous, that judicial error does not give the State a basis for retrying Mr. Mayeux.

After the federal court's ruling in *Mayeux v. Belt*, the appellate courts of this state have continued to follow the ruling of the Louisiana Supreme

13

Court in *Mayeux* by ordering new trials when a defendant is convicted of a non-crime, although numerous courts have deemed the federal court's reasoning persuasive and questioned the continued viability of *State v. Mayeux*. *See*, *State v. Marsh*, 2017-0584 (La. App. 4 Cir. 11/8/17), 231 So. 3d 736; *State v. Norman*, 2003-248 (La. App. 5 Cir. 5/28/03), 848 So. 2d 91, *writs denied*, 2003-1934, 1938 (La. 1/9/04), 862 So. 2d 981, 982. *State v. Nazar*, 1996-0175 (La. App. 4 Cir. 5/22/96), 675 So. 2d 780; *but see*, *State v. Hurst*, 2010-1204 (La. App. 3 Cir. 4/13/11), 62 So. 3d 327, *writ denied*, 2011-0975 (La. 10/21/11), 73 So. 3d 383 (appellate court entered acquittal on the charged crime after defendant was convicted of a non-crime, noting that although it preferred to follow *Mayeux*, it "refuse[d] to waste the limited judicial resources of this state in vain and futile acts." *Id*. at 332 (*quoting State v. Campbell*, 1994-1268 (La. App. 3 Cir. 5/3/95), 657 So. 2d 152, *writ granted*, 1995-1409 (La. 11/17/95), 663 So. 2d 724, and *aff'd in part*, *vacated in part*, 1995-1409 (La. 3/22/96), 670 So. 2d 1212).

At the time of Sims' trial, the responsive verdicts for attempted first degree murder were as follows: (1) guilty; (2) guilty of attempted second degree murder; (3) guilty of attempted manslaughter; (4) guilty of aggravated battery; (5) guilty of aggravated assault with a firearm; and (6) not guilty. La. C. Cr. P. art. 814(A).[2]

As to each count of the seven counts of attempted first degree murder Sims was charged with, the trial court instructed the jury as to the following responsive verdicts: (1) guilty as charged of attempted first degree murder;

---

[2] Aggravated assault with a firearm was added as a responsive verdict listed under La. C. Cr. P. art. 814(A)(2) by amendment in 2018. *See*, Acts 2018, No. 680. Amendments to responsive verdicts are procedural, and the list of responsive verdicts in effect at the time of trial, not the time of the offense, should be used. *State v. Martin*, 351 So. 2d 92 (La. 1977); *State v. Smith*, 41,048 (La. App. 2 Cir. 6/30/06), 935 So. 2d 797.

14

(2) guilty of attempted second degree murder; (3) guilty of attempted manslaughter; (4) guilty of aggravated battery; (5) guilty of aggravated assault on a peace officer with a firearm; and (6) not guilty. The jury instructions provided in pertinent part:

> In order to convict the defendant of Attempted First Degree Murder, of any or all of the various Counts, you must find beyond a reasonable doubt that the state proved every element of Attempted First Degree Murder. If you are not convinced that the defendant is guilty of the offense charged for any, one or some of the counts, you may find the defendant guilty of a lesser offense, if you are convinced beyond a reasonable doubt that the defendant is guilty of a lesser offense.

The jury found Sims guilty of six counts of aggravated assault on a peace officer with a firearm, which is not a responsive verdict to attempted first degree murder. Furthermore, aggravated assault on a peace officer with a firearm is not an enumerated offense in Louisiana.[3]

The law is clear that a return of a non-responsive verdict operates as an acquittal to the charged offense and a bar to any subsequent prosecution of the charged offense, but in addition to being non-responsive, the verdict in this case also purported to convict Sims of an offense not specifically designated as a crime in Louisiana. Pursuant to *State v. Mayeux*, *supra*, there is no double jeopardy bar to the defendant's retrial after being convicted of a non-crime. We must disagree.

There are numerous Louisiana cases regarding verdicts non-responsive to the crime charged. Some simply involve whether the

---

[3] In 2017, the date of the offenses in this case, aggravated assault on a peace officer with a firearm was not an enumerated offense. Aggravated assault on a peace officer, La. R.S. 14:37.2, and aggravated assault with a firearm, La. R.S. 14:37.4, were enumerated offenses. The requirement that an aggravated assault on a peace officer be committed with a firearm was removed from La. R.S. 14:37.2 in 2016. *See* Acts 2016, No. 225. Notably, neither aggravated assault on a peace officer with a firearm nor aggravated assault on a peace officer have ever been responsive verdicts to attempted first degree murder.

responsive verdict is provided for by C. Cr. P. art. 814. Others address whether, when Article 814 provides no legislatively authorized responsive verdicts, the responsive verdict is truly a lesser included offense in accordance with C. Cr. P. art 815, in that all of its essential elements are also essential elements of the greater offense charged. While the analysis may differ among these cases, the holdings are consistent: a conviction of a non-responsive verdict is illegal and serves as an acquittal of the crime charged. These cases likewise apply the longstanding principle that a verdict of acquittal ends a defendant's jeopardy and is a bar to subsequent prosecution for the charged crime.

For the purpose of double jeopardy, whether or not a non-responsive verdict is for an offense specified in our criminal law is a distinction without a difference. Either way, the jury was given a full opportunity to return a verdict on the greater charge, and either way, a retrial would put the defendant twice in jeopardy. While we agree with *Mayeux* that a verdict that is both non-responsive and a non-crime is wholly invalid and can serve neither as a conviction or acquittal, we nevertheless find such a verdict is an *implicit* acquittal of the crime charged, and as an acquittal, express or implied, it is a bar to any subsequent prosecution of the charged offense.

If this matter were remanded for a new trial, Sims would again face six counts of attempted first degree murder—crimes for which a jury already had a full opportunity to return a verdict of guilty. Furthermore, he would be exposed to a sentence significantly greater than the one previously imposed.[4]

---

[4] If Sims was convicted of six counts of attempted first degree murder on remand and the trial court was again inclined to sentence Sims to the maximum sentence on each

16

*State v. Mayeux*, and its reluctant progeny, is an outlier among a legacy of Louisiana and United States Supreme Court cases that uphold both the sanctity of jury instructions and verdicts and the Fifth Amendment right against double jeopardy. Allowing *Mayeux* to stand without limitation encourages the continuation of careless prosecution, ineffective defense, and judicial error. This sometimes leads to the state having a second bite at the apple, which thwarts the Fifth Amendment's explicit prohibition of double jeopardy. We find that the jury's verdict of guilty as to the non-crime of aggravated assault on a peace officer with a firearm implicitly acquitted Sims of the charged offense of attempted first degree murder. Therefore, the matter is remanded to the trial court for entry of a post-verdict judgment of acquittal as to Counts Two through Seven.

*Excessive Sentence*

In his final assignment of error, Sims asserts the sentences imposed in this matter are unconstitutionally harsh and excessive given the facts and circumstances of the case. He argues consecutive sentences are not warranted, noting his actions constituted one incident or transaction, none of the officers were actually injured, and there was no particular viciousness in his actions. Sims further points out that he is 40 years old, employed, has no significant criminal history, admitted to firing the shots, and admitted alcohol was a problem for him. The sentences on Count Two through Seven will be vacated in accordance with the above holding; therefore, Sims' arguments regarding the excessiveness and consecutive nature of those sentences is pretermitted and analysis of this assignment of error will be

charge and to again run some or all of his sentences consecutively, Sims would face 50-300 years of imprisonment at hard labor.

17

limited to the excessiveness of the 10-year hard labor sentenced Sims received on Count 1, the aggravated battery of Dep. McCrell.

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 2016-0959 (La. 5/1/17), 219 So. 3d 332. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. DeBerry*, *supra*. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. DeBerry*, *supra*. The trial court is not required to assign any particular weight to any specific matters at sentencing. *State v. Parfait*, 52,857 (La. App. 2 Cir. 8/14/19), 278 So. 3d 455, *writ denied*, 2019-01659 (La. 12/10/19), 285 So. 3d 489.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v.*

*Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 2001-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Meadows*, 51,843 (La. App. 2 Cir. 1/10/18), 246 So. 3d 639, *writ denied*, 2018-0259 (La. 10/29/18), 254 So. 3d 1208.

The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Williams*, 2003-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Allen*, 49,642 (La. App. 2 Cir. 2/26/15), 162 So. 3d 519, *writ denied*, 2015-0608 (La. 1/25/16), 184 So. 3d 1289. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *State v. Allen*, *supra*. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Adams*, 53,055 (La. App. 2 Cir. 11/20/19), 285 So. 3d 526, *writ denied*, 2020-00056 (La. 9/8/20), 301 So. 3d 15.

As a general rule, maximum or near-maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Cozzetto*, 2007-2031 La. 2/15/08), 974 So. 2d 665; *State v. Hogan*, 47,993 (La. App. 2 Cir. 4/10/13), 113 So. 3d 1195, *writ denied*, 2013-0977 (La. 11/8/13), 125 So. 3d 445.

La. R.S. 14:34(B) provides that a person convicted of aggravated battery shall be fined not more than $5,000.00, imprisoned with or without hard labor for not more than 10 years, or both.

19

At the sentencing hearing, the trial court noted that it had reviewed the PSI report, the sentencing memorandum submitted by the defense, and letters submitted on behalf of Sims. The trial court heard testimony from Union Parish Sheriff Dusty Gates[5] and Lisa McCrell, Dep. McCrell's wife, who both expressed the hardships faced by police officers and their families and requested a sentence that reflects respect for law enforcement. The trial court considered the facts of this case, and noted that although nobody was injured, firing a shotgun three times in the direction of law enforcement officers is an "incredibly serious offense." In considering the sentencing factors set forth in La. C. Cr. P. art. 894.1, the trial court stated that Sims knowingly created a risk of death or great bodily harm to more than one person, that Sims used actual violence in the commission of the offense, Sims used a dangerous weapon, there were seven victims in this case, and Sims foreseeably endangered human life. The trial court also reviewed Sims' minimal criminal history, noting that he is a first-felony offender and has only several misdemeanor arrests.[6]

The reasons stated by the trial court, the record, and the PSI report provide an adequate factual basis for the sentence imposed. Further, Sims' 10-year sentence for aggravated battery is not constitutionally excessive. Considering Sims would have faced 20-50 years at hard labor had the jury returned a verdict of guilty as charged of attempted first degree murder, the

---

[5] Sheriff Gates was not one of the victims in this case.

[6] Specifically, in 2002, charges for simple possession of marijuana and simple battery were dismissed. In 2005, a charge of simple battery was dismissed based on Sims' completion of a diversion program. No disposition was known for 2014 charges of failing to identify and a liquor violation. In 2015, Sims received probation for charges of criminal trespass and possession of a Schedule I CDS, and a charge for disturbing the peace was dismissed.

maximum sentence of ten years for the compromise verdict of aggravated battery does not shock the sense of justice, nor is it grossly disproportionate to the severity of the offense.[7]

## CONCLUSION

For the foregoing reasons, the conviction and sentence of Gary P. Sims, Jr., as to Count One are affirmed. The convictions and sentences of Count Two through Seven are reversed. The matter is remanded to the trial court to enter a post-verdict judgment of acquittal on Counts Two through Seven in accordance with this opinion.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS.**

---

[7] La. R.S. 14:27(D)(1)(b) provides that if the offense so attempted is punishable by death or life imprisonment and is attempted against an individual who is a peace officer engaged in the performance of his lawful duty, the defendant shall be imprisoned at hard labor for not less than twenty nor more than fifty years without benefit of parole, probation, or suspension of sentence.

**MOORE, C.J.** *concurring.*

Although I respectfully concur in the result reached in this case, I write this concurrence to express my disagreement with the majority's conclusion that whether a non-responsive verdict is a designated or not designated crime under Louisiana criminal law is "a distinction without a difference" because "either way, a [remand for] retrial would put the defendant twice in jeopardy." This conclusion, of course, is contrary to *State v. Mayeux*, 498 So. 2d 701 (La. 1986) wherein the court expressly stated that a conviction for an unspecified crime cannot have the same effect as a conviction for a crime that is non-responsive to the charge. In *Mayeux,* the non-crime, non-responsive verdict of "attempted aggravated battery" occurred as a result of judicial error that resulted in neither a conviction nor an acquittal. Finding that the Double Jeopardy Clause of the Fifth Amendment did not apply, the court said:

> The Double Jeopardy Clause forbids a second trial when the prosecution fails to muster sufficient evidence to convict the defendant in the first proceeding. *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). However, double jeopardy does not preclude the state from retrying a defendant whose conviction is set aside because of judicial error. **This reflects a balancing of the defendant's interest in seeing that criminal proceedings against him are resolved once and for all in a single prosecution against society's valued interest in enforcement of its criminal laws.** *United States v. Jorn*, 400 U.S. 470, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971). To allow another prosecution when patent error has occurred at trial, "reflects the judgment that the defendant's double jeopardy interests, ... do not go so far as to compel society to so immobilize its decision making resources that it will be prepared to assure the defendant a single proceeding free from harmful governmental or judicial error." *Jorn*, *supra*, 400 U.S. at 484, 91 S. Ct. at 556.

1

The case was remanded for retrial.

The supreme court reiterated this *Mayeux* distinction between a non-responsive verdict and a non-crime verdict in *State v. Graham*, 14-1801 (La. 10/14/15), 180 So. 3d 271, 278 (2015). Regarding its *Mayeux* decision, it noted that Mr. Mayeux had subsequently obtained federal habeas relief from federal district court, which concluded that retrying Mr. Mayeux on the aggravated battery charge was improper since "there is no reason why a conviction or acquittal for a non-crime could not operate as an acquittal of the charge of aggravated battery." *Mayeux v. Belt*, 737 F. Supp. 957 (W.D. La. 1990). It went on to say, however:

> Regardless of whether this Court's decision in *Mayeux* remains viable, defendant [Graham] here was not found guilty of a non-crime. He was convicted of molestation of a juvenile, a crime established in Revised Statute 14:81.2.

In my view, the significance of *Graham* is that, while finding that the jury's verdict of molestation of a juvenile was neither a responsive verdict under La. C. Cr. P art. 814 nor a lesser and included offense under La. C. Cr. P. art. 815 such that it would operate as an acquittal under La. C. Cr. P. art. 598, it still concluded that the verdict was an *implicit acquittal* of the initial charge of aggravated incest and molestation of a juvenile because the state did not adduce the evidence of one essential element to support either of the offenses:

> Given the state's failure to prove familial affinity between the defendant and the alleged victim at the time of the incident—an essential element of aggravated incest—the jury implicitly acquitted defendant of that charge by returning a verdict of guilty of molestation of a juvenile. The jury's implicit acquittal is a bar to any subsequent prosecution for aggravated incest.

The court further concluded that the proceedings were rendered "fundamentally unfair" by the district court when it allowed the state to add molestation of a juvenile to the list of responsive verdicts with the defendant having no opportunity to mount a defense to the charge.

In *State v. Price,* 17-0520 (La. 6/27/18), 250 So. 3d 239 (2018), the defendant was charged with five counts of second degree kidnapping and three counts of second degree murder. The defendant was found guilty of five counts of simple kidnapping and two counts of negligent homicide. However, there are no statutorily authorized responsive verdicts to the crime of second degree kidnapping in La. C. Cr. P. art. 814. Therefore, pursuant to La. C. Cr. P. art. 815, for simple kidnapping to be a responsive verdict for second degree kidnapping, it must be a lesser and included grade of second degree kidnapping. Lesser and included grades of the charged offense are those in which all of the essential elements of the lesser offense are also essential elements of the greater offense charged. In a per curiam opinion, the court concluded that the verdicts for simple kidnapping were non-responsive because it is possible to commit second degree kidnapping (at least 10 ways) without committing simple kidnapping.

The court concluded that the non-responsive verdicts implicitly acquitted the defendant of the second degree kidnapping charge citing the passage in *Graham*, *supra*, quoted above.

In both *Graham, supra* and *Price*, *supra*, the court found that, under the facts of the case, a verdict for a crime non-responsive under La. C. Cr. P. art. 814, or not a lesser and included grade of charged offense results in an implicit acquittal of the charged offense. *Graham* also distinguishes the non-crime, non-responsive verdict in *State v. Mayeux* from the non-

3

responsive verdict of molestation of a juvenile, because the latter is a designated crime. Furthermore, the *Graham* court stressed the fundamental unfairness of the proceedings and the lack of evidence adduced by the state to prove an essential element of the offense charged as well as the non-responsive verdict.

In view of these considerations, *State v. Mayeux* is still viable in cases where the jury returns a guilty verdict for a non-crime. *See State v. Anderson*, 17-0927 (La. App. 1 Cir. 4/8/18), *writ denied*, 18-0738 (La. 3/16/19), 266 So. 3d 901. However, such cases do not always automatically require remand for a new trial. *State v. Mayeux* can be read to require the reviewing court to weigh the defendant's interest in seeing that criminal proceedings against him are resolved once and for all in a single prosecution against society's valued interest in enforcement of its criminal laws. In those cases where the facts show that the judicial error thwarted the will of the jury and society's interest in enforcement of its criminal laws, remand for a new trial may be called for. On the other hand, in cases in which the facts show that the state failed to provide evidence to prove one or more essential elements of the charged offense or that the proceedings were fundamentally unfair to the defendant, and the jury returns a non-responsive verdict that is not an assigned offense under the law, remand for post-judgment of acquittal is very likely appropriate.

It has long been held that jeopardy for an offense ends after an express acquittal or acquittal implied by a conviction on a lesser included offense when the jury was given a full opportunity to return a verdict on the greater charge. *Price v. Georgia,* 398 U.S. 323, 329, 90 S. Ct. 1757, 1761, 26 L. Ed. 2d 300 (1970). This, of course, is embodied in La. C. Cr. P. art. 598(A).

4

The instant case before this court involves a conviction for an offense that is neither an express acquittal of the charged offense, nor an implied acquittal on a lesser included offense, however. The "responsive verdict" is neither a lesser included offense, nor a responsive verdict, nor a crime defined by Louisiana Criminal Law. *Graham* and *Price* indicate that there are circumstances where even a non-responsive verdict that is also a non-lesser included grade of the charged offense serves as an implicit acquittal.

Sims was charged with seven counts of attempted first degree murder in this case. The court instructed the jury as to the six responsive verdicts it could return:

(1) Guilty as charged of attempted first degree murder;
(2) Guilty of attempted second degree murder;
(3) Guilty of attempted manslaughter;
(4) Guilty of aggravated battery;
(5) Guilty of aggravated assault on a police officer with a firearm;
(6) Not guilty.

The jury returned a guilty verdict for the lowest guilty charge on the list, which is not an assigned crime by the legislature because it included the phrase "on a police officer," which would be an added element to the offense. Since the alleged victims in this case were police officers, the evidentiary burden of proof was *de minimis*. Nevertheless, the offense is a non-crime and it is neither a responsive verdict nor a lesser included grade of the charged offense, inasmuch as one can commit attempted first degree murder without committing aggravated assault on a peace officer. Therefore, the verdict is non-responsive and legally invalid as a non-crime.

However, balancing the severity of the charges against the defendant against his right to have the charges against him decided in a single trial proceeding, and considering the fact that the jury had ample opportunity to

hear the evidence and render a verdict on the charged offenses, which satisfies society's interest in enforcement of its criminal laws, I concur with the majority that, in this case, the jury verdicts for counts 2 through 7 should be treated as implicit acquittals of those counts which bars retrial.

Furthermore, I agree with the majority that the conviction for aggravated battery on count one is valid and that the conviction and sentence on count one should be affirmed.

**Stone, J., dissenting in part.**

I agree that Sims' conviction for aggravated battery must be affirmed. Contrary to the majority, however, I find that Sims was validly convicted of aggravated assault with a firearm. To me, the majority's decision to reverse/vacate those convictions is based on excessively technical reasoning which extends *State v. Price,* 17-0520 (La. 6/27/18), 250 So. 3d 230, and *State v. Mayeux,* 498 So. 2d 701 (La. 1986), significantly beyond their precedential authority. I respectfully dissent in this regard.

Aggravated assault with a firearm: (1) is specifically designated as a crime under La. R.S. 14:37.4; (2) is explicitly made responsive to the charge of attempted first degree murder under La. C.Cr.P. art. 814(A)(2); and (3) was clearly and unambiguously included – as a matter of logic, fact, and language – in the relevant provision of the verdict sheet (*i.e.*, "aggravated assault on a peace officer with a firearm").

The verdict sheet conflated two separate crimes – "aggravated assault with a firearm" and "aggravated assault on a peace officer." La. R.S. 14:37.2 & La. R.S. 14:37.4. The former is defined as follows: "*Aggravated assault with a firearm is an assault committed with a firearm.*" La. R.S. 14:37.4(A). Thus, as previously stated, "aggravated assault with a firearm" is statutorily designated as a crime, and whether the victim is a peace officer or not is irrelevant to the definition of this crime. *Id.* The jury could not possibly have found the defendant guilty of "aggravated assault on a peace officer with a firearm" without finding that he violated La. R.S. 14:37.4. Simply put, aggravated assault with a firearm is a crime under La. R.S. 14:37.4 whether the victim is a peace officer or not.

1

Furthermore, the legislature explicitly made aggravated assault with a firearm a responsive verdict for attempted first degree murder. La. C.Cr.P. art 814(A)(2).

The majority relies upon *State v. Price, supra*, and *State v. Mayeux, supra*, in reversing/vacating Sims' conviction for aggravated assault with a firearm (on a peace officer). However, neither of these cases is authoritative in this case.

In *State v. Mayeux*, *supra*, the defendant was charged with aggravated battery, and the jury returned a guilty verdict for "attempted aggravated battery," an act which was not designated as a crime by statute. If the language rendering the verdict a non-crime was stricken, nothing would have remained but the charged offense itself: "~~attempted~~ aggravated battery." Thus, the verdict: (1) found Mayeux guilty of a non-crime (attempted aggravated battery); and (2) implicitly acquitted him of the charged offense (aggravated battery). The federal district court recognized this implicit acquittal in subsequent habeus corpus proceedings. *Mayeux v. Belt,* 737 F. Supp. 957 (W.D. La. 1990).

Conversely, in this case, Sims was charged with attempted first degree murder, but was convicted of "aggravated assault with a firearm on a peace officer," which is not verbatim designated as a crime. If the harmless surplus language rendering the verdict a "non-crime" were stricken, a statutorily defined crime specifically made responsive by La. C.Cr.P. art 814(A)(2) would remain: "aggravated assault with a firearm ~~on a peace officer~~." This distinguishes the holding in *State v. Mayeaux*, *supra*, and requires us to affirm the conviction for aggravated assault with a firearm. To hold otherwise elevates form over substance.

2

In *State v. Price*, *supra*, the defendant was charged with second degree kidnapping, but the jury convicted him only of the lesser offense of simple kidnapping. Second degree kidnapping is not covered by La. C.Cr.P. art. 814, which provides exhaustive lists of responsive verdicts for specified crimes. Instead, second degree kidnapping is covered by La. C.Cr.P. art. 815, which applies to all crimes not specified in La. C.Cr.P. art. 814, and allows guilty verdicts for "lesser and included" grades of the charged offense. Because second degree kidnapping can be committed without also committing simple kidnapping, the latter is not a "lesser and included" grade of the former. Conversely, in this case, La. C.Cr.P. art. 814 (A)(2) explicitly makes aggravated assault with a firearm responsive to the charged offense of attempted first degree murder.

Additionally, the majority cites *State v. Simmons,* 357 So. 2d 517 (La. 1978), for the proposition that the trial court has no authority to add to or vary the responsive verdicts prescribed by La. C.Cr.P. art. 814. *State v. Simmons* is not authoritative in this case because it addressed a very different issue from the one presented in the instant case. Specifically, *State v. Simmons* addressed whether the trial court erred in refusing to add a responsive offense to the exhaustive list provided by La. C.Cr.P. art. 814. This case addresses whether the erroneous insertion of the phrase "on a peace officer" invalidated the jury's verdict finding the defendant guilty of aggravated assault with a firearm (on a victim who happened to be a peace officer).

Finally, I point out that the evidence is sufficient to convict the defendant of aggravated assault with a firearm because he admittedly fired his shotgun through the wall toward where he (correctly) thought there were

3

people. Therefore, in light of the sentencing range for aggravated assault with a firearm, and the sentences imposed, the trial court's conflation of these two separate crimes on the verdict sheet was not prejudicial to the defendant.

I would hold that the defendant was validly convicted of aggravated assault with a firearm; clarify that the defendant was not and could not be validly convicted of aggravated assault on a peace officer; and affirm the defendant's sentences.